IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

AZIA WELLS, and

JAMES WELLS, JR.,

    *Plaintiffs*

v.                                                                                                               4:23-cv-27

JASON PONDER, and

DALE LYNN,

    *Defendants*

---

## COMPLAINT
---

The Plaintiffs, Azia Wells and James Wells, Jr., hereby bring suit against the Defendants as follows:

## INTRODUCTION

1)    This lawsuit involves the government's kidnapping of children in order to pressure them to testify against their father in a criminal case.

1

## THE PARTIES

2) Plaintiff AZIA WELLS, is a private citizens of Coffee County, Tennessee, and the mother of daughter A.R. and son J.W., both the subject of this lawsuit.

3) Plaintiff JAMES WELLS, JR. is a private citizen of Coffee County, Tennessee. He is the stepfather of A.R. and father of J.W.

4) Defendant JASON PONDER is a criminal prosecutor for the State of Tennessee in Coffee County. He is named individually.

5) Defendant DALE LYNN is a case manager for the Tennessee Department of Children's Services in Coffee County. He is named individually.

## FACTUAL BACKGROUND

### *Allegations of Crime, and First Juvenile Case*

6) During the months leading up to August 2022, Plaintiff JAMES WELLS, JR. was facing serious criminal charges of Aggravated Child Abuse (Under Age Eight). To be specific, the State of Tennessee was charging that he had burned his young son J.W. on the shoulder, and on purpose. If convicted, he faced many years in prison.

7) Originally, the criminal case had arisen when the son, J.W,, proudly showed off a burn mark on his shoulder while at school. The mark was rather small,

2

with the skin somewhat disfigured in a shape that might correspond to a lighter. J.W. called the mark a "tattoo," saying that his father had burned him.

8) To investigate, the police interviewed JAMES WELLS. During the interview, the father openly admitted that he had burned the child, but only by accident. He said that while he was using a lighter, his son had jumped on him, burning his shoulder as it rubbed against the hot metal.

9) On the date of that interview, August 26, 2021, the police arrested WELLS and charged him criminally.

10) Around the same time, the Tennessee Department of Children's Services initially seized the two WELLS children, A.R. and J.W. Supposedly, the seizure was carried out to protect them from abuse. This seizure would begin the first of two dependency and neglect cases.

11) After a preliminary hearing on September 9, 2021, the juvenile court found probable cause that the children were dependent and neglected. The judge prohibited JAMES WELLS from contacting either child. But in the same order, he returned custody to the mother, AZIA WELLS.

12) While this first juvenile case progresed, Plaintiff JAMES WELLS was still sitting in jail, awaiting his criminal trial. As such, he could not realistically maintain physical custody of the children, anyway. However, he did desire to communicate with them.

13) Later, on December 17, 2021, the juvenile court closed the first dependency and neglect case. It found the children dependent and neglected because their father was still incarcerated, facing criminal prosecution. But in the same order, it awarded custody to the mother, AZIA WELLS.

14) As for visitation by the father, this final order just said that JAMES would be required to follow any restrictions imposed by the criminal court.

15) Importantly, the criminal court never restricted JAMES WELLS from communicating with his stepdaughter, A.R. Likewise, although the criminal court did impose some bond conditions that would restrict communication with J.W. — those restrictions only applied if he gained release. Since JAMES never made bond, no restrictions on his speech applied.

16) Both AZIA WELLS and JAMES WELLS had a liberty interest in raising their children, especially after this first juvenile case was concluded.

### *Approach of the Criminal Trial, and Second Juvenile Case*

17) As for the criminal trial over Aggravated Child Abuse, originally the trial was set for July 26, 2022.

18) But then on July 22, 2022, and then a second time on July 25, 2022, Prosecutor JASON PONDER moved to continue the criminal trial. As grounds, he asserted that the two children had recently given statements adverse to the prosecution, saying that their father was innocent and had only burned the

4

shoulder by accident. In light of the exculpatory testimony, PONDER argued that the children were being coached to lie.

19) As a result, PONDER wanted the government to take the children away from their parents so that the government could flip their testimony to be more favorable to the government. As one of his affidavits put it, "The state needs time to coordinate with the Department of Children Services to investigate whether the victim's mother, Azia Michelle Wells, is the appropriate placement of the victim and his sister."

20) The defense objected that giving the government time to kidnap children and tamper with testimony was an improper basis for a continuance, and that JAMES WELLS had always wanted a speedy trial.

21) Despite this objection, on July 25, 2022, the circuit court granted the motion to continue so that the State could have more time to seize the children of the accused. The court reset the criminal trial for August 18, 2022.[1]

22) Sometime between approximately July 25, 2022 and August 5, 2022, Prosecutor JASON PONDER and Department of Children's Services case manager DALE LYNN met together and conspired to carry out the aforementioned goal.

23) Namely, as a criminal prosecutor for the State of Tennessee, PONDER advised LYNN to execute the seizure of both children.

---

1 To be clear, basically the same motion for a continuance was filed twice. On July 22, 2023, the court denied it. But on July 25, 2023, the court granted it.

24) In the end, both PONDER and LYNN agreed to seize the two Wells children for the purpose of helping the State get testimony against their father.

25) One pretext that they invented for the seizure was the idea that Plaintiff JAMES WELLS was somehow barred from speaking with the children by order of the juvenile court (really he wasn't), and that he was somehow harming them emotionally by speaking.

26) But at no point thus far have the Defendants pointed to any specific speech between JAMES WELLS and the children that was even improper, or mean-spirited, much less unprotected by the Constitution.

27) Instead, JAMES and AZIA WELLS were punished simply for talking with family about their everyday activities — harmless things.

28) Pursuant to plan, during the morning of August 5, 2022,[2] case manager LYNN went to A.R.'s school and seized her without any court authorization.

29) Likewise, no exigent circumstances justified the seizure.

30) The statute Tenn. Code Ann. § 37-1-114(a)(2) allows for a warrantless seizure of a child who is not only dependent and neglected, but also subject to an immediate threat to health or safety, such that waiting for a court hearing would cause severe or irreparable harm. Plainly none of that applied here, as to A.R.

31) LYNN and PONDER originally intended for LYNN to carry out the same warrantless seizure with J.W., too. But the son could not be located because he did not attend school that day.

---
2 In 2023, August 5 fell on a Saturday. This Complaint is being filed on Monday.

32) Nonetheless, later that day, LYNN obtained an ex parte order granting the Department of Children's Services temporary emergency custody for both children.

33) Oddly, his application for the order swore, falsely, that he had already seized both children without any court order. Really he had not yet seized J.W.

34) Nonetheless, after getting the ex parte order, he took custody of J.W. later that evening, also on August 5, 2022.

35) During the removal of the children, Assistant District Attorney PONDER corresponded with Defendant LYNN by text, and by phone, providing his advice and encouragement for the seizure of the children.

36) According to the paperwork filed in juvenile court by LYNN, the children needed to be removed because they were speaking to their father, in violation of a court order, and resulting in extreme emotional distress.

37) Nonetheless, at the preliminary hearing on August 8, 2022, PONDER testified that, as for J.W., "He does not seem emotionally damaged at all[.]"

38) As for A.R., PONDER testified that her emotional distress consisted of getting teary-eyed when he tried to question her about her father's supposed crimes.

39) He also mentioned vaguely that, according to her mother, A.R. cries "often," "for lots of various reasons."

40) Despite the allegations in the dependency and neglect petition about contempt of court, really no court order had ever been violated by the speech.

7

41) Regardless, no one filed any petition charging contempt of court, anyway.

42) The regular, lawful purpose of dependency and neglect proceedings is not to punish people for alleged contempt — although the juvenile judge listed herein has made statements saying that he takes away children as punishment.

43) The regular, lawful purpose of dependency and neglect proceedings is not to punish people for speech, either.

44) The regular, lawful purpose of dependency and neglect proceedings is not to coerce individuals to cooperate with criminal prosecutions.

45) At the end of the preliminary hearing for this second juvenile case, the judge acknowledged that there was no proof of any serious emotional distress.

46) However, he claimed that there was proof of regular emotional distress.

47) Consequently, the judge banned JAMES WELLS from speaking with either child. He ordered that AZIA WELLS be deprived, as a "punishment," of legal and physical custody of both children while the dependency and neglect case proceeded to trial. He also restricted her visitation with both children.[3]

48) On August 19, 2022, JAMES WELLS was acquitted in the criminal case involving J.W.

---

3  There was no written order to go along with any of these preliminary rulings.

8

49) Notwithstanding the dubious posture of the juvenile case and notwithstanding the criminal acquittal, the juvenile restrictions on visitation and deprivation of legal and physical custody continued, to one degree or another, for over six months.

50) Due to the deprivations of custody and visitation from the second juvenile case, Plaintiffs AZIA and JAMES WELLS both suffered emotional distress and loss of enjoyment of life.

51) Eventually, in late February 2023, the second juvenile case was fully resolved — without any finding of neglect. Restrictions on communication were fully lifted as to both parents. Custody was fully returned to AZIA WELLS. (Still in jail awaiting trial on another, unrelated matter, JAMES WELLS was in no position to receive physical custody himself.)

52) During the events of this case, the Defendants were acting under color of law. One was a criminal prosecutor. The other was a social work case manager.

53) All the wrongs alleged were committed intentionally, wantonly, and/or maliciously, and worthy of punitive damages.

9

Case 4:23-cv-00027-TAV-CHS    Document 1    Filed 08/07/23    Page 9 of 14    PageID #: 9

# CLAIMS FOR RELIEF

## COUNT I

## DENIAL OF SUBSTANTIVE DUE PROCESS

## 42 U.S.C. § 1983

### *(All Defendants)*

54) The other sections are incorporated by reference.

55) By seizing the Plaintiffs' children for the purpose of influencing them to testify against their father in a criminal case — seizures that served no compelling government interest, and that also shocked the conscience — Defendants JASON PONDER and DALE LYNN deprived the Plaintiffs of substantive due process under color of law, in violation of the Fourteenth Amendment.

56) To be clear, as already discussed above, PONDER did not directly seize the children, but rather conspired with LYNN to do so.

## COUNT II

### INFRINGING THE FREEDOMS OF SPEECH AND ASSOCIATION

### 42 U.S.C. § 1983

### *(All Defendants)*

57) The other sections are incorporated by reference.

58) By seizing the two Wells children in retaliation for the Plaintiffs' protected speech and associations with family members, an act that could deter a person of ordinary firmness from speaking, Defendant LYNN violated the First Amendment under color of law.

59) By conspiring to seize the children and also to initiate the dependency and neglect proceeding, acts later carried out, all in retaliation for protected speech and associations, Defendant PONDER violated the First Amendment under color of law. The acts violated said amendment because they could deter a person of ordinary firmness from speaking.

## COUNT III

## DENIAL OF PROCEDURAL DUE PROCESS

## 42 U.S.C. § 1983

### *(All Defendants)*

60) By seizing A.R. at school without any court order, and indeed without any possible justification for foregoing the court order and all the normal, notice-and-hearing procedures readily available, the Defendants PONDER and LYNN deprived the Plaintiffs of procedural due process under color of law, in violation of the Fourteenth Amendment.

61) PONDER did not directly seize the children, but conspired with LYNN.

## COUNT IV

## ABUSE OF PROCESS

## Tennessee Common Law

### *(All Defendants)*

62) The other sections are incorporated by reference.

63) By initiating a judicial process to seize the Plaintiff's children, all with the primary, ulterior motive of influencing testimony in a criminal case, and by taking the irregular acts of invoking emergency custody, ex parte relief, pretrial detention of children, and such — all despite the absence of any physical harm to

12

the children, and despite even the dubious allegations of emotional harm — Defendants PONDER and LYNN committed abuse of process.

## JURISDICTION

64) The federal District Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Complaint raises federal claims. Also, the Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state claim that is factually and legally intertwined.

65) This Court in Tennessee has personal jurisdiction because the Defendants are citizens of Tennessee.

66) Venue is proper in the Eastern District of Tennessee (Winchester Division) because the events generally occurred here.

## PRAYER FOR RELIEF

PREMISES CONSIDERED, Plaintiffs Azia Wells and James Wells, Jr. pray for the following relief:

i) A jury trial,

ii) Nominal/compensatory damages of $500,000,

iii) Punitive damages of another $500,000,

iv) Reasonable attorney's fees, per 42 U.S.C. § 1988, and

v) Any further relief that the Court deems proper, such as the taxation of costs to the Defendants.

Respectfully submitted,

/s/ Drew Justice
Drew Justice #29247
Attorney for the Plaintiffs
1902 Cypress Drive
Murfreesboro, TN 37130
(615) 419-4994
drew@justicelawoffice.com

14