## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT WINCHESTER

AZIA WELLS, individually and as mother
and next friend of A.R. and J.W., and   )
JAMES WELLS, JR.,   )
       *Plaintiffs*,   )     No. 4:23-cv-00027
   )
v.   )     Judge Christopher H. Steger
   )
JAMES PONDER and DALE LYNN,   )
       *Defendants*.   )

## MEMORANDUM AND ORDER

### I.    Introduction

This lawsuit arose as a result of the Tennessee Department of Children's Services ("DCS") removing the minor plaintiffs, A.R. and J.W., from the custody of their parents, Azia Wells and James Wells, Jr. (collectively, the "Plaintiffs") and transferring them into DCS custody. Plaintiffs initiated this lawsuit against Assistant District Attorney General Jason Ponder ("Ponder") and Dale Lynn ("Lynn") under 42 U.S.C. § 1983 asserting federal claims for denial of substantive due process, denial of procedural due process, and unreasonable seizure in violation of the Fourteenth and Fourth Amendments. Plaintiffs also asserted a Tennessee state common law claim for malicious prosecution. Defendants Ponder and Lynn have filed separate motions for summary judgment. For the reasons stated herein, the Court finds that there is no genuine issue of material fact to support a claim upon which relief can be granted. Consequently, Defendants are entitled to judgment as a matter of law. Accordingly, Defendant Ponder's Motion for Summary Judgment [Doc. 62] and Defendant Lynn's Motion for Summary Judgment [Doc. 67] are **GRANTED**.

## II.    Facts

In reviewing the pending summary judgment motions, the Court views all facts and reasonable inferences drawn therefrom in a light most favorable to the non-moving party—in this case, James Wells ("Mr. Wells"), Azia Wells ("Ms. Wells"), A.R. and J.W.[1] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports v. Eliadis Inc.,* 253 F.3d 900, 907 (6th Cir. 2001).

Ms. Wells is the mother of the minor children, A.R and J.W, while Mr. Wells is the father of J.W. and the stepfather of A.R. [Doc. 59, 2d Am. Compl. ¶¶ 2–3]. Defendant Ponder is an assistant district attorney for the State of Tennessee in Coffee County, and is named individually in the second amended complaint. [*Id.* ¶ 4]. Defendant Dale Lynn is a case manager for DCS in Coffee County, and he also is named individually in the second amended complaint. [*Id.* ¶ 5].

In August 2021, while at school, J.W. "proudly" showed off a burn mark on his shoulder, "somewhat disfigured in a shape that might correspond to a lighter," and said his father had burned him. [*Id.* ¶ 7]. On August 26, 2021, police interviewed the child's father, Mr. Wells. [*Id.* ¶ 8]. Mr. Wells admitted that he had burned J.W.; however, he claimed that it had been an accident that occurred when the child had jumped on him while he was using the lighter, resulting in a burn to J.W.'s shoulder "as it rubbed against the hot metal." [*Id.* ¶ 8]. A.R. told a DCS investigator that she saw Mr. Wells burn J.W., and she believed that he did it on purpose. [Doc. 68-1, App., at 7]. That same day, police arrested Mr. Wells and charged him with aggravated child abuse. [Doc. 59, 2d

---

[1] For purposes of clarity, in discussing a claim asserted on behalf of all four Plaintiffs—Mr. Wells, Ms. Wells, A.R., and J.W.—the Court will refer to them collectively as "Plaintiffs." In discussing claims which are not asserted on behalf of all four Plaintiffs, the Court will associate each claim with the name or initials of the individual Plaintiff on whose behalf it is being asserted. In discussing claims asserted jointly on behalf of A.R. and J.W., the Court may refer to them as "the Children."

Am. Compl. ¶ 9]. The Children were then placed in DCS custody, and DCS initiated dependency-and-neglect proceedings in Tennessee juvenile court. [*Id.* ¶ 10].

On September 9, 2021, following a preliminary hearing, the juvenile court determined that probable cause existed to support a finding that the Children were dependent and neglected, and the court prohibited Mr. Wells from contacting the Children. [*Id.* ¶ 11]. The juvenile court ordered Ms. Wells to ensure that contact between Mr. Wells and the Children did not occur. [Doc. 68-1, App., at 20]. Thereafter, custody of the Children was returned to Ms. Wells; meanwhile, Mr. Wells was incarcerated. [Doc. 59, 2d Am. Compl. ¶¶ 11–12]. In December 2021, at the final adjudicatory hearing, the juvenile court closed the first dependency-and-neglect case, but "[i]t found the children dependent and neglected because their father was still incarcerated, facing criminal prosecution," and again awarded custody of the Children to Ms. Wells while Mr. Wells remained incarcerated. [*Id.* ¶ 13]. The juvenile court also ordered Mr. Wells to follow any restrictions imposed by the criminal court with respect to visitation with the Children. [*Id.* ¶ 14].

Mr. Wells' criminal trial for aggravated child abuse was scheduled on July 26, 2022. [*Id.* ¶ 17]. However, on July 22, 2022, Ponder, the state prosecutor assigned to the case, moved to continue the criminal trial, asserting that the two children had given statements adverse to the prosecution, saying their father was innocent and had only burned J.W.'s shoulder by accident. [*Id.* ¶ 18]. In view of this change in their stories, Ponder argued the Children were being coached to lie. [*Id.*].

Ponder then obtained jail calls between Mr. Wells and Ms. Wells for the time period between August 30, 2021, and July 24, 2022. [Doc. 63, Def's MSJ, at 3]. Ponder learned through reading and listening to the jail calls that Mr. Wells had been speaking to the Children during jail calls and video visits, and that Ms. Wells had allowed these communications to take place. [*Id.*].

Ponder discovered that Mr. and Ms. Wells had violated the no-contact order from the juvenile court multiple times in September of 2021. [*Id.* at 4]. Based on what Ponder learned from listening to the jail calls, he texted Dale Lynn on July 20, 2022, and asked him whether DCS would take action in response to parents coaching their children not testify against their father in a criminal case. [*Id.*]. Lynn responded that it might constitute "psych harm." [*Id.*]. Also on the jail calls, Ponder heard Ms. Wells tell Mr. Wells that she would have to "beat" A.R. [*Id.*]. It appeared to Ponder, from listening to the jail calls and in his dealings with A.R., that she appeared "frightened and traumatized." [*Id.*]. Ponder then filed an amended motion to continue the trial on July 25, 2022. The Court rescheduled the trial for August 18, 2022. [Doc. 59, 2d Am. Compl. ¶¶ 18, 21]. Ponder's stated purpose for the motion to continue was to "see if forensic interviews of the children could be conducted and to obtain counseling for A.R.," and to provide the Children with a safe place to talk. [Doc. 63, Def's MSJ, at 5, 22].

Ponder, Lynn, and a DCS attorney met to discuss the matter on August 2, 2022. [Doc. 68-1, App., at 2]. Ponder told Lynn and the DCS attorney that he was concerned that the Children had changed their story about how J.W. received the burn; that Mr. Wells was speaking to the Children despite the no-contact order; and that he believed A.R. needed counseling. [Doc. 63, Def's MSJ, at 5].

On August 4, 2022, DCS received an intake with allegations of lack of supervision against Mr. and Ms. Wells. [Doc. 68-1, App., at 2, 12–13]. The intake was assessed and assigned to Lynn. [*Id.*]. The intake stated: (1) there was a no-contact order in place between the Children and Mr. Wells through the juvenile court; (2) Ponder reported having videos of Ms. Wells allowing the Children to interact with Mr. Wells; (3) there was a pending child abuse charge against Mr. Wells due to him "branding" J.W.; (4) both Children initially disclosed that the "branding" incident was

not an accident; (5) the Children subsequently recanted their earlier statements; and (6) the Children appeared to have been coached to change their stories. [*Id.* at 2, 8, 334–35].

Lynn reviewed the intake allegations and found them to be credible. He then discussed appropriate next steps with his supervisor and the DCS legal department. [Doc. 68, Def's MSJ, at 4]. The DCS attorney consulted with the Coffee County Juvenile Court Judge, Judge Perry, who orally awarded custody to DCS at 11:00 a.m. on August 5, 2022. [*Id.*]. A DCS attorney drafted and submitted an Ex Parte Petition ("the Petition"), which contained Lynn's statements, and a proposed order to the judge. [*Id.*]. Specifically, the Petition stated: (1) the Children had been allowed access to their father despite the no-contact order; (2) Mr. Wells had other pending criminal charges; (3) Lynn believed "the Children's access to their father has caused severe mental health concerns and psychological harm"; and (4) there is danger of harm to the Children if they are allowed to remain in their mother's custody. [Doc. 68-1, App., at 2–3]. Judge Perry signed the proposed order to bring the Children into DCS custody. [Doc. 68, Def's MSJ, at 4]. Lynn received a copy of the signed order, went to the Children's school, and presented the signed order around 1:30 p.m. [*Id.*]. A DCS employee transferred A.R. to the DCS office. [*Id.*]. J.W. was not removed from school, and relatives brought him to the DCS office at 10:00 p.m. that evening. [*Id.*].

The next business day, August 8, 2022, the juvenile court held a preliminary hearing on the Petition. [*Id.*]. The court found probable cause that Mr. and Ms. Wells had violated the no-contact order, and stated that Ms. Wells' testimony was "extremely untrustworthy." [Doc. 68-1, App., at 366]. The court also found that the "Children's access to the father has caused severe mental health concern and psychological harm." [*Id.* at 367]. The court ordered that the Children remain in DCS custody. [*Id.* at 366].

The dependency-and-neglect case was concluded on February 21, 2023. [Doc. 59, 2d Am. Compl. ¶ 54]. At that time, the court lifted the restriction on communications for both parents, and Ms. Wells received custody of her Children. [*Id.*]. The court stated specifically that: (1) Ms. Wells "has cooperated with the department and has continued with her responsibilities"; (2) as a result of her compliance, "the children can be safely divested into her custody into the home"; (3) DCS moved the court for custody to be divested in the mother, case management services discontinued, and the case closed; and (4) placement with the mother would be in the Children's best interest. [Doc. 62-17, Order Concluding Trial Home Visit, Concluding Case Management Services, and Closing Case, at 2]. Mr. Wells was still in jail for an unrelated criminal matter at that time. [Doc. 59, 2d Am. Compl. ¶ 54].

## III. Analysis

### A. Standard of Review

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A material fact is one that matters—i.e., a fact that if found to be true, might affect the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The applicable substantive law provides the frame of reference to determine which facts are material. *Id.* A genuine dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party. *Id.*; *Jones v. Sandusky County*, 541 Fed. Appx. 653, 659 (6th Cir. 2013).

In deciding whether a dispute is genuine, the Court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson*, 477 U.S. at 249. Instead, the Court must view the facts and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l*

*Satellite Sports v. Eliadis Inc.,* 253 F.3d 900, 907 (6th Cir. 2001). However, when the facts, as alleged by the non-moving party, are so clearly contradicted by the record that no reasonable jury could believe them, the court should not rely on those facts for purposes of ruling on the summary judgment motion. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (finding a plaintiff's description of police conduct that is blatantly contradicted by video does not create a genuine dispute of material fact); *see also Coble v. City of White House,* 634 F.3d 865, 868–69 (6th Cir. 2011) (extending the reasoning in *Scott* to audiotape evidence).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp., v. Catrett*, 477 U.S. 317, 323 (1986); *Jones*, 541 F. App'x at 659. The moving party discharges its burden by either producing evidence that demonstrates the absence of a genuine issue of material fact, or by simply showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325. To refute such a showing, the non-moving party must present some significant, probative evidence to support his or her claim. *Id*. at 322. The mere existence of a scintilla of evidence is not enough; there must be evidence on which a fair-minded jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 251–52. Conclusory allegations are insufficient to defeat a well-founded summary judgment motion. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("[T]he object of this provision [Rule 56(c)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit.").

**B.      Overview of Plaintiffs' Claims**

Plaintiffs assert claims and seek damages under both federal and state law. More specifically:

- All Plaintiffs assert claims[2] under 42 U.S.C. § 1983 against Defendant Ponder and Lynn alleging two grounds: (1) a violation of their substantive due process rights under the Fourteenth Amendment of the United States Constitution for deprivation of their liberty by conduct which shocks the conscience; and (2) a violation of their substantive due process rights under the Fourteenth Amendment of the United States Constitution for deprivation of their protected speech and family integrity.

- Plaintiffs Ms. Wells and A.R. assert claims under 42 U.S.C. § 1983 against Defendants Ponder and Lynn alleging a violation of their procedural due process rights under the Fourteenth Amendment of the United States Constitution for deprivation of the required procedures for A.R.'s seizure from school.

- Plaintiffs A.R. and J.W. assert claims under 42 U.S.C. § 1983 against Defendant Lynn alleging wrongful detention without probable cause, or, in the alternative, with probable cause that was derived from intentional or reckless false testimony in violation of the Fourth Amendment of the United States Constitution.

- Plaintiffs Mr. Wells and Ms. Wells assert claims under Tennessee Common Law against Defendant Ponder alleging malicious prosecution, i.e., the initiation of judicial process without probable cause and with malice.

Plaintiffs' federal claims are premised on 42 U.S.C. § 1983. Section 1983 is a remedial statute which does not itself create independent substantive legal rights. Rather, Section 1983 simply provides a vehicle by which a person may recover damages for a violation of rights secured to him by federal law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). To state a claim under Section 1983, a plaintiff is required to show that he has been deprived of a right, privilege, or immunity secured to him by the United States Constitution or other federal law and that the defendants caused the deprivation while they were acting under color of state law. *Gregory v. Shelby County, Tenn.,* 220 F.3d 433, 441 (6th Cir. 2000). Here, Defendants do not dispute that they were acting under color of law at the time of the events giving rise to this action.

---

[2] To be clear, the minor Plaintiffs, A.R. and J.W., are not asserting claims on their own behalf. They are still minor children. Their mother, Azia Wells, is asserting claims on their behalf in her "next friend" capacity. For ease of reference in this order, the Court will, at times, refer to the claims of the Children as if they were asserting those claims themselves.

Beyond Plaintiffs' Section 1983 claims, Plaintiffs also assert a state law claim of malicious prosecution. This is a common law tort that allows an individual who was a defendant in a previous case to sue an individual involved in the previous legal proceeding for knowingly and maliciously pursuing the defendant based on a false accusation or charge. 5 Tenn. Prac. Civ. Proc. Forms § 8:211 (3d ed. 2001).

## C. Distinction Between Substantive Due Process and Procedural Due Process

The Fourteenth Amendment states that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "[T]he touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Wendrow v. Michigan Dep't of Hum. Servs.*, 534 F. App'x 516, 529–30 (6th Cir. 2013) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46, (1998) (internal quotation marks and citations omitted)).

Claims arising from "a denial of fundamental procedural fairness [by a state actor]", *id.*, are referred to as violations of *procedural due process rights*. In simple terms, procedural due process requires the government to follow established, fair procedures before taking away a person's life, liberty, or property. Such procedures would necessarily include things like notice and an opportunity to be heard.

On the other hand, *substantive due process rights* give rise to claims arising from "the exercise of power [by a state actor] without any reasonable justification in the service of a legitimate governmental objective" *Id.* Substantive due process prohibits "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*,

474 U.S. 327, 331 (1986). In other words, substantive due process prohibits state actors from infringing on certain fundamental, unenumerated rights, regardless of the fairness of the procedures employed. Examples of such fundamental rights which are not specifically enumerated in the Constitution would include such things as personal autonomy, family integrity, and privacy.

The Sixth Circuit loosely divides substantive due process claims into two categories: "(1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997) (citing *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993) and *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1474 (6th Cir. 1993)).

The Court will first discuss Plaintiffs' claims of violations of substantive due process and will then discuss Plaintiffs' claims of violations of procedural due process.

**D.    Plaintiffs' Claims of Violations of *Substantive* Due Process**

**1.    Substantive Due Process Claims on behalf of A.R. and J.W.**

Ms. Wells asserts a deprivation of substantive due process on behalf of A.R. and J.W., while Mr. Wells asserts a substantive due process claim only on behalf of J.W. Specifically, their claim is that Defendants deprived A.R. and J.W. of the substantive due process guaranteed by the Fourteenth Amendment when they "seized" A.R. and J.W., by removing them from their parents' home to take them into the custody of the Department of Children's Services. The Court finds, however, that Plaintiffs cannot rely upon a "deprivation of substantive due process" claim to gain the relief sought under the facts presented. This is true because, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273

(1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1994)). Here, there are particular Amendments that provide the constitutional protection that Plaintiffs are asserting, *to wit*, the Fourth Amendment via the Fourteenth Amendment.

Consequently, a Section 1983 claim premised upon a violation of the Fourth Amendment would have been the proper vehicle by which Plaintiffs could have asserted a claim that a constitutional violation occurred when Defendants removed A.R. and J.W. from their parents' home to take them into the custody of the Department of Children's Services. The Fourth Amendment, not substantive due process, specifically addresses a seizure. Thus, this claim should have been framed in the pleadings under the rubric of the Fourth Amendment. *See Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 809 F. Supp. 2d 754, 779 (N.D. Ohio 2011), aff'd and remanded, 724 F.3d 687 (6th Cir. 2013). It was not.

For the foregoing reasons, the substantive due process claims asserted on behalf of A.R. and J.W. for being "seized," (i.e., removed from their parents' home and taken into the custody of the Department of Children's Services) will be dismissed with prejudice.[3]

### 2. Mr. and Ms. Wells' Substantive Due Process Claim against Ponder

Mr. and Ms. Wells have asserted a substantive due process claim in their own right against Ponder. Mr. and Ms. Wells allege that Ponder seized the Children to garner assistance from them in prosecuting his child abuse criminal case against Mr. Wells. They go on to allege that conducting a seizure for the purpose of harming someone other than the person being seized constitutes unconstitutional behavior that "shocks the conscience." The Court notes that conduct shocks the conscience when it "violates the 'decencies of civilized conduct.'" *Lewis*, 523 U.S. at

---

[3] A.R. and J.W. bring a Fourth Amendment claim against Lynn in Count Five; however, this claim is only against Lynn. The Fourth Amendment claim is discussed below.

846 (quoting *Rochin v. California*, 342 U.S. 165, 172–73 (1952)). While what counts as conscience-shocking behavior is not always clear, "negligent behavior fails to shock the conscience, but intentional harm does." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 766 (6th Cir. 2020). In the child removal context, whether a "government actor was pursuing a legitimate governmental purpose" and "whether that interest outweighed the deprivation of the parental liberty interest in this instance" are relevant to the inquiry. *Id.* at 767 (quoting *Range v. Douglas*, 763 F.3d 573, 590 (6th Cir. 2014)).

By way of context, Ponder maintains that, after the Children changed their stories, he sought only forensic interviews of the Children and counseling for A.R., as well as a safe place for the Children to talk. He states that he was trying to prevent abuse from the Wells' parents, and that he reported the suspected child abuse as he is statutorily required to do as a law enforcement officer. Tenn. Code Ann. § 37-1-403(c)(1). Mr. and Ms. Wells do not dispute the following facts which support Ponder's legitimate governmental purpose in preventing child abuse: (1) A.R. appeared distraught and traumatized; (2) Ms. Wells wanted to "beat" A.R.; (3) J.W. and A.R. changed their stories about how J.W. was burned with the lighter; and (4) Mr. and Ms. Wells were complicit in initiating contact between the Children and Mr. Wells in violation of the court's no-contact order. Mr. and Ms. Wells do not offer any evidence demonstrating that Ponder's actions in juvenile court were for the purpose of harming anyone or to gain some advantage in the prosecution of Mr. Wells. It is undisputed that Ponder had a legitimate governmental purpose in protecting the welfare of the Children.[4]

--------------------------------------------

[4] Plaintiffs argue that Ponder had no basis to report an abuse claim to Lynn because Mr. Wells was in jail and was no longer in a position to abuse the Children at that point. [*See* Doc. 71, Pl.'s Resp. in Opp., at 9]. This argument misses the point. Ponder did not report possible abuse because he was concerned that Mr. Wells would again burn J.W. with a lighter. Rather, he contacted Lynn and DCS because he was concerned that Mr. and Ms. Wells were coaching the

The Court finds that Ponder's efforts to obtain forensic interviews from the Children, counseling for A.R., and a safe place for the Children to talk does not constitute "conscience-shocking behavior." *See Range*, 763 F.3d at 589 (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957)) (finding that conduct shocks the conscience when it is "so 'brutal' and 'offensive' that it [does] not comport with traditional ideas of fair play and decency").

Mr. and Ms. Wells cite to *Cnty. of Sacramento v. Lewis*, 523 U.S. at 833, to support their contention that an arrest, combined with an intent to harm someone other than the legitimate target of the arrest, satisfies the shocks-the-conscience standard. In *Lewis*, a motorcycle passenger was killed when he was hit by a police officer, who was pursuing the driver of the motorcycle as a suspect in a high-speed chase. The Supreme Court found that the officer's behavior did not shock the conscience because, although the officer caused death through "deliberate or reckless indifference to life" in a high-speed chase aimed at pursuing the suspect, "only a purpose to cause harm unrelated to the legitimate object of arrest [would] satisfy the element of arbitrary conduct shocking to the conscience." *Lewis*, 523 U.S. at 836.

In the present case, Mr. and Ms. Wells do not provide any evidence to demonstrate that Ponder had a "purpose to cause harm" to anyone. Ponder had a legitimate governmental interest both in pursuing criminal charges against Mr. Wells, and in protecting the Children by providing a safe place for them be interviewed, and, with respect to A.R., to receive counseling. The Court further notes that the Children were not "arrested" to harm Mr. Wells (who was in jail at the time). Rather, the Children were removed from Ms. Wells' custody because she had been complicit in

_____

Children to lie; Mr. and Ms. Wells had violated the court's no-contact order; Ms. Wells said she wanted to "beat" A.R; and A.R. appeared traumatized.

violating the juvenile court's no-contact order. Thus, Mr. and Ms. Wells' citation to *Lewis* is misplaced.

For these reasons, the Court concludes that Mr. and Ms. Wells have failed to demonstrate the existence of a material factual dispute to establish the elements of their substantive due process claim based on a seizure that shocks the conscience.

### 3. Mr. and Ms. Wells' Substantive Due Process Claim against Lynn

Mr. and Ms. Wells have also asserted a substantive due process claim against Lynn, claiming that his "seizure" of the Children shocks the conscience.

By way of background, Lynn, a DCS employee, received a report that: (1) Mr. Wells branded J.W. with a lighter; (2) the Children originally stated that the incident was not an accident; (3) there was a no-contact order in place between Mr. Wells and the Children; (4) Mr. and Ms. Wells violated the no-contact order; and (5) the Children changed their story, now saying that the lighter incident was an accident. Lynn, as a DCS employee, was required to investigate claims after receiving a report of harm. Tenn. Code Ann. §§ 37-1-406(a), 37-1-412. Lynn took steps to perform the investigation. He contacted his supervisor and the DCS legal department. DCS then filed the Petition, which the juvenile court granted. Following the juvenile court's entry of an order, Lynn went to the Children's school to retrieve A.R. and J.W., as he was required to do.

There is no evidence to support a claim that Lynn's actions were brutal, offensive, or conscience-shocking. Mr. and Ms. Wells provide no case precedent to demonstrate that Lynn's actions were anything but a customary response to suspected child abuse. In fact, Sixth Circuit precedent explicitly supports the proposition that removing children to protect them from their parents is not conscience-shocking behavior. *See Siefert*, 951 F.3d at 767 ("Even if we disagree with the choice the Defendants made, we cannot say that when faced with that choice, the

Defendants' opting to err on the side of protecting the child at the expense of depriving the parents of their parental rights . . . is conduct that shocks the conscience.").

Mr. and Ms. Wells make the same allegation against Lynn as they do against Ponder, *to wit*, that Lynn seized the Children for the ulterior motive of helping convict Mr. Wells of child abuse. However, as with Ponder, Mr. and Ms. Wells have offered no evidence to support that claim.

For these reasons, the Court concludes Mr. and Ms. Wells have failed to make a showing sufficient to establish the elements of their substantive due process claim that Lynn engaged in a seizure that shocks the conscience. Defendant Lynn is entitled to summary judgment with respect to Mr. and Ms. Wells' substantive due process Claim against him.

### 4. Mr. and Ms. Wells' Substantive Due Process Claim Based on Family Integrity

Mr. and Ms. Wells also assert a substantive due process claim against Defendants alleging that Ponder and Lynn infringed on Plaintiffs' right to associate together as a family (referred to as "family integrity"). "Substantive due process provides that, irrespective of the constitutional sufficiency of the processes afforded, government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 729 (6th Cir. 2011) (citing *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). The right to family integrity under substantive due process can be violated by governmental entities if the entities obtaining custody of a child do so in a way that shocks the conscience, regardless of the procedures used. *Barnett v. Hommrich*, No. 3:17-CV-155, 2018 WL 10195923, at *7 (E.D. Tenn. Mar. 27, 2018). While the right to family integrity is critically important, "[t]he right is limited by an equaling compelling governmental interest in the protection of children, particularly where the children need to be protected from their own

parents." *Kottmyer v. Maas*, 436 F.3d 684, 690 (6th Cir. 2006) (citing *Myers v. Morris*, 810 F.2d 1437, 1462 (8th Cir. 1987)).

The Sixth Circuit has made clear that plaintiffs do not have a claim under substantive due process for loss of family associations when the juvenile court orders the removal of a child, because the juvenile court holds the ultimate decision-making authority regarding custody cases. *See Pittman*, 640 F.3d at 729 ("Because the juvenile court has the ultimate decision-making power with respect to placement and custody, it alone could deprive Pittman of his fundamental right."); *Kovacic*, 809 F. Supp. 2d at 781 (finding that the "juvenile court, and not defendants, had the ultimate decision-making power with respect to the placement and custody of the [ ] children[,]" thus "the juvenile court alone could deprive plaintiffs of their fundamental right"); *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 586 (6th Cir. 2013) (holding that the plaintiff's substantive due process claims failed because "the court was the final decision-maker regarding [the child's] custody decisions").

Mr. and Ms. Wells' claims against Lynn differ slightly from those against Ponder. The Wells' claim against Lynn is based on an allegation that he physically took the Children. The Court notes, however, that custody of the Children was taken from the Wells only after the juvenile court found probable cause that the Children were dependent and neglected and entered a protective custody order authorizing Lynn to seize the Children. The juvenile court ordered the removal of the Children from Mr. and Ms. Wells' custody; Lynn did not. He was only acting pursuant to a valid court order.

Mr. and Ms. Wells' claim against Ponder is based upon a different premise. They allege that while Ponder "did not personally take [the Children], he still conspired to take them." [Doc. 71, Pl.'s Resp. in Opp., at 15]. However, conspiracy claims require pleading with specificity and

offering evidence that defendants acted in concert. *See Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.") (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). Because there rarely is direct evidence of an express agreement among all the conspirators to conspire, "circumstantial evidence may provide adequate proof of conspiracy." *Spadafore*, 330 F.3d at 854 (quoting *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000)).

Mr. and Ms. Wells' claim that Defendants conspired to take the Children is unsupported by any facts in the record. For his part, Ponder asserts that he did not request or encourage DCS, the criminal court, or the juvenile court to remove the Children. There is evidence that Ponder texted Lynn to ask whether DCS would take some action if a mother was coaching her children not to testify against their father; however, this fact does not establish that Defendants acted in concert to take the Children. Similarly, while there is evidence that Lynn and Ponder met on August 2, 2022, to discuss Ponder's concerns about the Children, this fact does not show that they conspired or "met for unlawful purposes with regard to taking the Wells' children." [Doc. 71, Pl.'s Resp. in Opp., at 16].

There is no evidence demonstrating that Ponder and Lynn conspired together to seize the Children. The juvenile court decided to remove the Children from the Wells household. The Defendants did not make that decision individually or together.

### E.  Plaintiffs' *Procedural* Due Process Claims

Ms. Wells and A.R. bring a claim against Defendants Lynn and Ponder alleging a violation of their procedural due process rights when A.R. was seized from school. "Procedural due process is traditionally viewed as the requirement that the government provide a fair procedure when

depriving someone of life, liberty, or property." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (internal quotations omitted). A procedural due process claim "challenges the procedure by which a removal is effected," while a substantive due process claim challenges "the fact of removal itself." *Barnett v. Hommrich*, No. 3:17-CV-155, 2018 WL 10195923, at *8 (E.D. Tenn. Mar. 27, 2018); (quoting *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012)); *see also Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) ("[S]tate intervention in the relationship between a parent and child must be accomplished by procedures meeting the requisites of the Due Process Clause."). To succeed on a procedural due process claim, plaintiffs must show that they were deprived of a constitutionally protected interest, and that the deprivation happened without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *Kennedy v. City of Cincinnati*, 595 F.3d 327, 334 (6th Cir. 2010).

Under Sixth Circuit law in child removal cases, "due process requires, among other things, that 'parents be given notice prior to the removal of the child . . . stating the reasons for the removal . . . [and that] [t]he parents be given a full opportunity at the hearing to present witnesses and evidence on their behalf.'" *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 724 F.3d 687, 700 (6th Cir. 2013) (quoting *Doe v. Staples*, 706 F.3d 985, 990–91 (6th Cir. 1983)). However, "[i]f there is an exigency involving an immediate danger to the child's safety, [ ] a child can be removed from a parents' custody if the parents are later provided a prompt post-deprivation hearing." *Barnett*, 2018 WL 10195923, at *8. The applicable Tennessee law provides procedures that follow the constitutional guidelines of the Due Process clause in most aspects. *See* T.C.A. § 37-1-114, § 115, § 117.

With respect to the procedural due process claim against Lynn, Ms. Wells and A.R. claim that Lynn seized A.R. without a court order. Specifically, these Plaintiffs state that a reasonable

jury could find that Lynn did not have an order before seizing A.R. at school, alleging that he carried out the seizure prior to the order being issued. [Doc. 71, Pl.'s Resp. in Opp., at 16]. However, Lynn states that: (1) on August 5, 2022, the juvenile court orally approved the Children's removal at 11:00 a.m.; (2) a DCS attorney then drafted the Petition and a proposed order; (3) the juvenile court signed a protective custody order bringing the Children into DCS custody; (4) Lynn received a copy of the signed order from the judge; and (5) Lynn went to the school to remove A.R. around 1:30 p.m. that day. [Doc. 68, Def's MSJ, at 4].

Ms. Wells and A.R. dispute that Lynn had a court order when he removed A.R., because the Petition states that the Children were removed into DCS custody at 11:00 a.m., which they interpret to mean that the Children already had been seized prior to the filing of the Petition. [Doc. 71, Pl.'s Resp. in Opp., at 5]. However, Lynn states that the judge *orally* ordered the Children's removal at 11:00 a.m. [Doc. 74, Def's Resp. to Pl.'s Resp. in Opp., at 3]. According to Lynn, after the judge orally approved the removal, DCS filed the Petition, and the judge put down a written order granting DCS temporary legal custody of the Children. [*Id.*]. Lynn asserts that he had that order in hand when he seized A.R. around 1:30 p.m. at school. [*Id.*].

The Court notes that the juvenile court's Ex Parte Protective Custody Order states that "temporary legal custody of the above-named Children is awarded to the State of Tennessee, Department of Children's Services, as of August 5, 2022, at 11:00 a.m." [Doc. 62-14, Ex Parte Protective Custody Order, at 2]. The Petition states that the "Children were removed into protective custody by DCS at approximately 11:00 a.m. on August 5, 2022." [Doc. 62-13, Petition for Temporary Legal Custody and Ex Parte Order, at 4]. It does not say that the Children were *physically seized* at 11:00 a.m. *See Staples*, 706 F.2d at 989 (holding that a parent can have physical custody of a child while a state agency has temporary legal custody). Further, as Ms. Wells and

A.R. point out, J.W. was not seized until the evening of August 5, 2022. [*See* Doc. 71, Pl.'s Resp. in Opp., at 5]. Thus, when viewing these facts in the light most favorable to Plaintiffs, it is undisputed that 11:00 a.m. was the time that DCS gained legal custody of the Children, and any physical seizure of the Children after 11:00 a.m. on August 5, 2022, occurred under the express authority of the juvenile court. No genuine issue of material facts exists to controvert that the juvenile court ordered legal custody of the Children to be transferred to DCS at 11:00 a.m. on August 5, 2022, and that the physical seizure of the Children occurred after the juvenile court had entered its written order.

With respect to the procedures themselves, Lynn followed applicable Tennessee law, the juvenile court rules, and the juvenile court order authorizing removal of A.R. from school. Under Tennessee Law, the juvenile court may authorize the removal of a child prior to a hearing when it finds probable cause to believe the child is neglected, dependent, or abused, and delaying the hearing could result in severe or irreparable harm. Tenn. Code Ann. §§ 37-1-114(a)(2). If an order is issued making these findings, a preliminary hearing must be held within seventy-two hours of the removal to determine whether the child's continued removal is required. Tenn. Code Ann. § 37-1-117(c). That is precisely what happened in this case. Lynn received intake for allegations of lack of supervision against Mr. and Ms. Wells; Lynn told the legal department at DCS; the legal department consulted with the juvenile court about this matter; and the juvenile court awarded custody of the Children to DCS and signed a protective custody order on August 5, 2022. Lynn then went to A.R.'s school and seized A.R., as the protective order required him to do. The next business day, August 8, 2022, the juvenile court held a preliminary hearing, finding probable cause that Ms. Wells violated the no-contact order and that the Children were at risk of psychological harm, and concluded that the Children would remain in DCS custody. Lynn, as well as the juvenile

court, followed the applicable procedures provided under Tennessee state law. These procedures also align with Sixth Circuit interpretation of the due process clause in child removal cases. *See Kovacic*, 724 F.3d at 700; *Staples*, 706 F.2d at 990–91; *Barnett*, 2018 WL 10195923, at *8.

With respect to the procedural due process claim against Ponder, Ms. Wells and A.R. claim that, while Ponder did not specifically seize A.R., he conspired to seize her, and thus he is liable for his participation in this violation of due process. Ms. Wells and A.R.'s only basis for this claim is that Ponder's "conscious participation in other aspects of the conspiracy should [ ] allow an inference that he participated here as well." [Doc. 71, Pl.'s Resp. in Opp., at 16]. This statement lacks the specificity required for a conspiracy claim. As the Court also found above, Plaintiffs fail to adequately plead that a conspiracy has taken place in this case. Moreover, because the procedural due process claim for the seizure of A.R. is not viable, there is no basis for a claim against Ponder for conspiring to commit a procedural due process violation.

## F.      Plaintiffs' Fourth Amendment Claim Against Lynn

Ms. Wells on behalf of A.R. and J.W., and Mr. Wells on behalf of J.W., assert a Fourth Amendment claim against Lynn alleging that their right to be free from unreasonable seizures was violated when the Children were removed into DCS custody. The Fourth Amendment prohibits "unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the persons or things to be seized." U.S. Const. amend. IV. "[W]arrantless searches and seizures by a state officer violate the Fourth Amendment unless a recognized exception to the warrant requirement applies." *Bambach v. Moegle*, 92 F.4th 615, 628 (6th Cir.), cert. denied, 145 S. Ct. 281 (2024) (citing *Andrews v. Hickman Cnty., Tenn.*, 700 F.3d 845, 854 (6th Cir. 2012)).

In the Sixth Circuit, the Fourth Amendment "prohibits removal of a child without a court order or the existence of a valid exception to the warrant requirement." *Id.* (citing *Kovacic*, 724 F.3d at 698 (emphasis omitted)); *see also Tenenbaum v. Williams*, 193 F.3d 581, 602 (2d Cir. 1999) (stating that "a court order is the equivalent of a warrant"). But, with a court order, removal of a child from their parents' home is "constitutionally reasonable." *Godboldo v. Cty. of Wayne*, 686 F. App'x 335, 343 (6th Cir. 2017) (quoting *Krantz v. City of Toledo Police Dep't*, 197 F. App'x 446, 453 n.5 (6th Cir. 2006)); *see also Heithcock v. Tenn. Dep't of Children's Servs.*, No. 15-6236, 2016 WL 11786416, at *4 (6th Cir. Oct. 4, 2016) ("Because the removal of [the child] was done pursuant to a court order, there was no Fourth Amendment violation.") (citing *Krantz*, 197 F. App'x at 453 n.5).

Additionally, "social worker[s], like other state officers, [are] governed by the Fourth Amendment's warrant requirement." *Andrews*, 700 F.3d at 859. Thus, "a social worker, like a police officer, cannot execute a removal order that would not have been issued but for known falsities that the social worker provided to the court to secure the order." *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 685 (6th Cir. 2018). Fourth Amendment rights are not violated when social workers obtain a court order before removing a child, and there are merely "general assertions" that the removal order "was based on false statements and otherwise lacked probable cause." *Barber v. Miller*, 809 F.3d 840, 848 (6th Cir. 2015).

A.R. brings this claim based on two theories: (1) she was removed without probable cause and without a court order; or (2) she was removed based on a court order whose sworn probable cause was derived from intentionally or recklessly false testimony. J.W. brings this claim based on the latter theory only.

The Court has already established that Lynn had a court order when he removed A.R. Thus, the Fourth Amendment was not violated because the removal of a child is constitutional so long as there is a court order or a valid exception to the warrant requirement. *See Bambach*, 92 F.4th at 628.

A.R. claims, however, that the allegations Lynn made in the Petition—which were submitted to the judge and formed the basis for the court's removal order—were not supported by probable cause. Specifically, A.R. challenges Lynn's conclusion that the Children were suffering from severe psychological harm, alleging that Lynn had no basis or evidence for that claim. However, Lynn explained that he did have credible evidence that: (1) the Children stated Mr. Wells burned J.W. on purpose; (2) Mr. Wells faced pending criminal charges; (3) the Wells parents violated the juvenile court's no-contact order; and (4) the Children had potentially been coached to change their testimony. While Plaintiffs do not dispute any of these facts, they challenge whether such evidence could cause psychological harm. Lynn stated that, based on his training and experience, and pursuant to Tennessee Department of Children Services policies, parents violating a court order and encouraging their children to change their testimony gave him the basis to reasonably believe that the Children were subject to psychological harm. [*See* Doc. 68-1, App., at 297–300].[5] Lynn presented this information to the juvenile court judge, who found there was probable cause to find that the Children were dependent and neglected pursuant to Tenn. Code Ann. § 37-1-102(b)(12). [*See* Doc. 62-14, Ex Parte Protective Custody Order].

---

[5] Specifically, in Lynn's deposition, he stated that he believes coaching a young child or allowing an abuser to have access to their child "can be" psychological harm, and he believed it was something that "would need to be investigated." *Id.*

The important distinction here is not whether Lynn believed there was enough evidence to amount to probable cause that the Children were psychologically harmed, but whether the *juvenile court judge*, when viewing Lynn's statements in the Petition, believed there was probable cause that the Children were dependent and neglected.[6] *See United States v. Leon*, 468 U.S. 897, 921 (1984) (finding that it is the "judge's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment"); *United States v. Reed*, 993 F.3d 441, 450 (6th Cir. 2021) ("When a judge issues a warrant, the judge has made the independent decision that probable cause exists for the search"). The probable cause determination was within the purview of the juvenile court judge, not Lynn. The evidence that Lynn presented to the judge is not disputed, *to wit*, that the Children stated Mr. Wells burned J.W. on purpose; Mr. Wells faced pending criminal charges; the parents violated the no-contact order; and the Children changed their testimony. Thus, Plaintiffs have failed to demonstrate the existence of a material factual dispute regarding Lynn's statements in the Petition which supported probable cause.

Additionally, Plaintiffs claim that Lynn made reckless or intentionally false statements to generate the probable cause set forth in the Petition. Specifically, they allege that Lynn made a false statement in representing, "It is believed the children's access to their father has caused severe mental health concerns and psychological harm." However, it is undisputed that Lynn had credible evidence that the Children first represented that Mr. Wells intentionally burned J.W; Mr. Wells

---

[6] Dependent and neglected is the standard the juvenile court uses in order to remove a child into custody prior to a hearing on a petition. *See* Tenn. Code Ann. § 37-1-114(a)(2) (West).

was criminally charged; Mr. and Ms. Wells violated the juvenile court's no-contact order; and the Children changed their story after such violation occurred.

Plaintiffs argue that it was false for Lynn to say that violation of the no-contact order which resulted in the Children speaking with Mr. Wells actually caused severe psychological harm. They maintain that, at most, it "could" cause severe psychological harm. The Court finds that Lynn's belief that Mr. Wells' unauthorized contact with the Children actually caused psychological harm is not evidence of a false statement, much less one made recklessly or intentionally. Lynn had a reasonable basis to believe the Children were psychologically harmed by Mr. and Ms. Wells' disregard of the no-contact order prohibiting contact with the incarcerated Mr. Wells. Lynn presented that information to the juvenile court judge, and the judge found probable cause to remove the Children.

The analysis does not end there. To hold a social worker accountable for known falsities they presented to the court, the known falsities must be the but-for cause of the removal order. *See Brent*, 901 F.3d at 685 (finding that a social worker cannot rely on a court's probable cause determination to justify executing a warrant if the social worker "knowingly ma[de] false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant") (citing *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003)). There is no dispute that the primary reason the juvenile court authorized removal of the Children was due to Mr. and Ms. Wells' violation of the no-contact order. The juvenile court found there was probable cause that Mr. and Ms. Wells violated the no-contact order on multiple occasions. [*See* Doc. 68-1, App., at 366]. Plaintiffs cannot establish that Lynn's representation that the Children had suffered psychological harm is the "but for" reason that the juvenile court judge entered the removal order.

Plaintiffs have failed to demonstrate that there are facts supporting their claims that either or both of the Children were: (1) removed without probable cause; (2) removed without a court order; or (3) removed pursuant to a court order predicated upon sworn probable cause derived from intentionally or recklessly false testimony.

### G.     Mr. and Ms. Wells' Malicious Prosecution Claim Against Ponder

Mr. and Ms. Wells also assert a state law malicious prosecution claim against Ponder based on Ponder's alleged initiation of the juvenile proceeding. Malicious prosecution is a common law tort that allows an individual who was a defendant in a previous case to sue an individual involved in the previous legal proceeding for knowingly and maliciously pursuing the defendant based on a false accusation or charge. 5 Tenn. Prac. Civ. Proc. Forms § 8:211 (3d ed. 2001). While the tort of malicious prosecution seeks to address misuse of the legal process, courts have also found that "[a]ctions for malicious prosecution . . . ought not to be favored but managed with great caution." *Mynatt v. Nat'l Treasury Emps. Union, Chapter 39*, 669 S.W.3d 741, 746 (Tenn. 2023) (quoting *Roblyer v. Hoyt*, 343 Mich. 431, 72 N.W.2d 126, 128 (1955) (internal quotation marks omitted)). Malicious prosecution claims are generally disfavored because they "have the potential to create a chilling effect on the right to access of the courts." *Himmelfarb v. Allain*, 380 S.W.3d 35, 41 (Tenn. 2012).

To state a claim for malicious prosecution, a plaintiff must show that the defendant instituted a proceeding against him "without probable cause," "with malice," and that the proceeding "terminated in the plaintiff's favor." *Mynatt*, 669 S.W.3d at 746 (citing *Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992)).

Mr. and Ms. Wells allege that Ponder initiated the juvenile proceeding against them in August of 2022 to achieve removal of their Children; that he did so without probable cause and

with malice; and that the proceeding terminated in Mr. and Ms. Wells' favor because the juvenile court ultimately divested custody of the Children back to Ms. Wells. Ponder disputes each of these points.

"[A] person is liable for malicious prosecution even though he or she did not personally sign the complaint that initiates the proceeding or did not file a direct charge." *Thompson v. Hamm*, No. W201500004COAR3CV, 2015 WL 7234539, at *4 (Tenn. Ct. App. Nov. 17, 2015). But, "before one can be liable for malicious prosecution, he must do something more than merely give information." *Id.* (quoting *Wykle v. Valley Fidelity Bank & Trust Co.*, 658 S.W.2d 96, 99 (Tenn. Ct. App. 1983), *perm. app. denied* (Tenn. Aug. 1, 1983)).

Ponder argues that he simply gave Lynn and DCS information, pursuant to his statutory duty, to the effect that: (1) Ms. Wells was allowing contact between the Children and Mr. Wells in contravention of the juvenile court order; (2) the Children had changed their earlier story, presumably because they were being coached to lie; and (3) A.R. appeared to be traumatized. After receiving this information, DCS, on its own initiative, filed the Petition in juvenile court and received the Ex Parte Order of Removal from the judge. Ponder did not draft the Petition, nor did he encourage DCS to take any action on the information he provided. Thus, Ponder did not institute the judicial process in this matter.

While Ponder maintains that he did not institute the judicial proceeding, he argues that, even if he were found to have initiated the judicial proceeding, there was probable cause to do so. Probable cause exists when there are "such facts and circumstances sufficient to create in a reasonable mind the belief that the accused is guilty of the crime charged." *Leland v. Louisville Ladder Grp.*, LLC, No. M2006-02109-COA-R3-CV, 2007 WL 4440923, at *4 (Tenn. Ct. App. Dec. 5, 2007) (quoting *Roberts v. Fed. Exp. Corp.*, 842 S.W.2d 246, 248 (Tenn. 1992)). "In the

context of an action for malicious prosecution, the question is not whether the plaintiff was actually guilty of the crime alleged against him, but whether reasonable grounds existed for the defendant's belief that he was guilty." *Smith v. Kwik Fuel Ctr.*, No. E2005-00741-COA-R3CV, 2006 WL 770469, at *7 (Tenn. Ct. App. Mar. 27, 2006). Here, Ponder witnessed the Children change their stories about how J.W. was burned. Ponder also heard jail calls demonstrating that Mr. Wells had contact with the Children, despite the no-contact order, and that Ms. Wells was allowing such contact. Additionally, when Ponder listened to the jail calls, he heard Ms. Wells say that she needed to "beat" A.R. Finally, Ponder observed that A.R. appeared traumatized and distressed. Thus, there were ample facts supporting probable cause to believe that Mr. and Ms. Wells were causing harm to the Children. DCS, not Ponder, used those facts and circumstances to write the Petition and initiate the judicial proceeding.

Since Ponder did not initiate the judicial proceeding, he could not have done so "with malice." Prosecuting with malice "concerns the subjective mental state of the prosecutor." *Roberts*, 842 S.W.2d at 248. However, when a lawsuit is brought without probable cause, "the existence of malice can be inferred." *Residents Against Indus. Landfill Expansion, Inc. (RAILE) v. Diversified Sys., Inc., No. 03A01-9703-CV-00102*, 1998 WL 18201, at *4 (Tenn. Ct. App. Jan. 21, 1998). No evidence has been offered that Ponder acted "with malice" when he reported facts to DCS. The Court finds that the objective, undisputed facts reported by Ponder support probable cause for DCS to initiate a judicial proceeding. Given the existence of such probable cause, the existence of malice on the part of Ponder cannot be inferred. Thus, there is no genuine issue of material fact to support Plaintiffs' claim that Ponder initiated the judicial proceeding against them without probable cause and with malice.

Finally, Ponder asserts the termination of the juvenile court case was not favorable to Mr. and Ms. Wells. Mr. and Ms. Wells claim it was favorable, because it ended with the juvenile court divesting custody of the Children to Ms. Wells. Tennessee courts define a favorable termination as one that must "relate to the merits—reflecting on . . . [ ]either innocence of [ ]or responsibility for the alleged misconduct and not a dismissal on procedural or technical grounds." *Mynatt*, 669 S.W.3d at 749 (quoting *Parrish v. Marquis*, 172 S.W.3d 526, 531 (Tenn. 2005), *overruled in part by Himmelfarb v. Allain*, 380 S.W.3d 35 (Tenn. 2012) (internal quotation marks omitted)). This definition is used whether the underlying action is civil or criminal, and is limited to the documents which dispose of the proceeding. *Id.* at 752.

Here, the Petition filed by DCS on August 5, 2022, contained allegations that Mr. and Ms. Wells may be causing psychological harm to their Children. On August 8, 2022, the juvenile court held a preliminary hearing and concluded that there was evidence of Mr. and Ms. Wells violating the no-contact order and causing psychological harm. Some six months later, on February 21, 2023, the case was closed, and the juvenile court found that the Children could be restored to the custody of Ms. Wells. The order stated that Ms. Wells "cooperated with the department" and complied with her responsibilities. [Doc. 62-17, Order Concluding Trial Home Visit, Concluding Case Management Services, and Closing Case, at 2]. This order did not repudiate the merits of the August 5 Petition, nor did it absolve Mr. and Ms. Wells from responsibility for violating the no-contact order and causing psychological harm to the Children. Rather, the juvenile judge found that, in the six months since the Petition issued on August 5, 2022, Ms. Wells had complied and cooperated with DCS, and that Ms. Wells could successfully regain custody of her Children. [*Id.*] Thus, this order does not represent a favorable termination for Mr. and Ms. Wells, as defined by Tennessee courts.

For the reasons set forth above, Plaintiffs' claim for malicious prosecution must fail.

## H.    Immunity

The Court notes that, even when a plaintiff sufficiently pleads a Section 1983 claim against a government official, the plaintiff must also overcome the obstacles of absolute and qualified immunity if such immunity is asserted by the defendant. *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 725 (6th Cir. 2011); *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 421 (6th Cir. 2001); *Dibrell v. State*, No. E202100405COAR3CV, 2022 WL 484563, at *5 (Tenn. Ct. App. Feb. 17, 2022). Beyond the reasons set forth above for dismissal of Plaintiffs' claims against Defendants, immunity provides additional bases for such dismissal.

### 1.    Qualified Immunity

In addition to the substantive defenses discussed above, Ponder and Lynn also maintain that they are entitled to qualified immunity for their actions. Qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Put differently, a "defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Morrison v. Bd. of Trs.*, 583 F.3d 394, 400 (6th Cir. 2009) (citing *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). The order in which the Court addresses the prongs of qualified immunity is within the Court's discretion. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "Once the qualified

immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (citing *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 970 (6th Cir. 2004)).

Having decided that the Defendants are entitled to summary judgment on the various claims in this case for reasons set forth above, the Court declines to determine the applicability of qualified immunity to each claim. The Court notes, however, that Defendants have raised the defense of qualified immunity, and it does not appear that Plaintiffs have carried the burden of proof of establishing that Defendants are not entitled to such immunity. The Court finds, however, that making such a determination would attenuate an already lengthy opinion, and would be redundant.

### 2. Ponder's Absolute Prosecutorial Immunity from Malicious Prosecution

In addition to qualified immunity, Ponder asserts the defense of absolute prosecutorial immunity for Mr. and Ms. Wells' malicious prosecution claim. Absolute immunity is reserved for those actors "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). The Sixth Circuit generally presumes that "qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Spurlock v. Thompson*, 330 F.3d 791, 796 (6th Cir. 2003) (quoting *Spurlock v. Satterfield*, 167 F.3d 995, 1003 (6th Cir. 1999) (internal quotation marks omitted)).

Importantly, "a prosecutor will only receive absolute immunity for activities that were an 'integral part of the judicial process.'" *Id.* at 797 (quoting *Imbler*, 424 U.S. at 430). Thus, "a prosecutor is protected in connection with his duties in functioning as a prosecutor." *Id.* (citing *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) (internal quotation marks omitted)). Some of these duties include "administrative or investigative acts necessary for a prosecutor to initiate

or maintain the criminal prosecution." *Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir. 1997). Accordingly, prosecutors receive absolute immunity in many malicious prosecution claims. *Spurlock*, 330 F.3d at 797 (citing *Burns v. Reed*, 500 U.S. 478, 485 n. 4).

Assuming for purposes of argument that Ponder did initiate the removal of the Children into DCS custody, such action was related to Ponder's investigative duties in connection with the prosecution of the criminal case against Mr. Wells. Ponder was prosecuting Mr. Wells for aggravated child abuse for allegedly burning J.W. In *Cunningham v. Dep't of Children's Servs.*, the Sixth Circuit found a DCS attorney absolutely immune for his role in obtaining an ex parte order requiring a parent to allow forensic interviews of a child. 842 F. App'x 959, 966 (6th Cir. 2021). The court found that "whatever [the attorney] did, he did so in the course of representing the state of Tennessee during juvenile court proceedings and as an advocate for the state." *Id.* While the attorney in *Cunningham* was a DCS attorney, and Ponder is a state prosecutor, the same reasoning applies. Ponder, in his role as a prosecutor, interviewed the Children about the criminal charges against Mr. Wells to determine whether they would be appropriate witnesses. During the interview, Ponder determined that the Children had changed their stories, and concluded that they had been coached to lie. He then obtained Mr. Wells' recorded jail calls and raised a concern to DCS about Mr. and Ms. Wells' violation of the no-contact order and potential harm to the Children.

It is clear that Ponder was acting in the scope of his prosecutorial duties when he sought to interview the Children. Their testimony was integral to the charge that Mr. Wells had intentionally burned J.W. with a lighter. He did what any trial lawyer would do by interviewing critical witnesses before going to court. Ponder enjoys absolute immunity for activities that were an integral part of the judicial process.

Mr. and Ms. Wells contend that there is an exception to absolute immunity when the seizure of Children resulted from a bad-faith investigation. *See Clark v. Stone*, 998 F.3d 287, 299 (6th Cir. 2021). A bad-faith investigation occurs when the investigation "was undertaken in bad faith or with a malicious motive." *Heithcock v. Tennessee Dep't of Children's Servs.*, No. 3:14-CV-02377, 2018 WL 1399586, at *6 (M.D. Tenn. Mar. 20, 2018). Mr. and Ms. Wells argue that both Ponder and Lynn participated in a bad-faith investigation because they were attempting to buttress a criminal prosecution and to punish speech, rather than to protect the Children. The evidence does not support such an argument. After Ponder listened to the jail calls between Mr. and Ms. Wells, he texted Lynn on July 20, 2022, and asked whether DCS would take action in a scenario in which parents coached their children not to testify against their father in a criminal case; Lynn responded that it might constitute "psych harm." [Doc. 63, Def's MSJ, at 3]. Such discussions were a normal part of the judicial process in which Ponder was involved. In his investigation of evidence supporting the criminal charges against Mr. Wells, Ponder came upon evidence suggesting additional child abuse and he discharged his statutory duty to report such conduct to DCS. Mr. and Ms. Wells have failed to demonstrate the existence of a material factual dispute that Defendants engaged in a bad-faith investigation.

The Court finds that Defender Ponder has absolute immunity for his role in the initiation of proceedings to remove the Children into the custody of DCS.

### 3. Lynn's Absolute Immunity

Lynn claims he is entitled to absolute immunity for all claims based on his filing of the Petition. Social workers are entitled to absolute immunity akin to absolute prosecutorial immunity under certain circumstances. *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 724 (6th Cir. 2011) (citing *Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000)). "The

analytical key to prosecutorial immunity . . . is advocacy—whether the actions in question are those of an advocate." *Id.* (citing *Holloway*, 220 F.3d at 775). Social workers are "absolutely immune only when they are acting in their capacity as legal advocates—initiating court actions or testifying under oath—not when they are performing administrative, investigative, or other functions." *Id.* at 724 (citing *Holloway*, 220 F.3d at 775). Thus, "[i]mmunity rests not on status or title but on the function performed." *Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir. 1989). Social workers receive absolute immunity when they perform functions like filing petitions in juvenile proceedings, initiating court proceedings, testifying under oath, and submitting affidavits to the court. *Pittman*, 640 F.3d at 724–25; *Bauch v. Richland Cnty. Child. Servs.*, 733 F. App'x 292, 296 (6th Cir. 2018); *Barber v. Miller*, 809 F.3d 840 (6th Cir. 2015); *see also Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 422 (6th Cir. 2001) ("Prosecutors and, by analogy, social workers who initiate proceedings related to the welfare of a child are entitled to absolute immunity while functioning in roles intimately associated with the judicial phase of proceedings.").

All of Plaintiffs' claims against Lynn derive from his filing of the Petition, and Lynn maintains that he enjoys absolute immunity for such action. In *Pittman*, the court found that a social worker filed a complaint and affidavit in support of a permanent custody motion in her capacity as a legal advocate, and she therefore was entitled to absolute immunity for those actions. 640 F.3d at 724 ("[F]amily service workers [are] absolutely immune from liability in filing [a] juvenile abuse petition, due to their quasi-prosecutorial function in the initiation of child abuse proceedings.") (quoting *Salyer*, 874 F.2d at 378) (internal quotation marks omitted). The Petition Lynn filed with the court reflected the information he received about the parents' violation of the no-contact order and his belief that it was a danger for the Children to remain in Ms. Wells' custody. Such conduct is "precisely the sort of conduct within a social worker's absolute

immunity." *Pittman*, 640 F.3d at 725; *Holloway*, 220 F.3d at 776. Filing the Petition was essential to Lynn's ability to advocate for the Children's best interests, and any lesser protection than absolute immunity "would jeopardize the essential process that has been established to provide protection to those children who need it most." *Bauch*, 733 F. App'x at 297.

Finally, Lynn also claims that he is entitled to absolute "quasi-judicial immunity" for all claims based on the Children's removal into state custody. Quasi-judicial immunity extends to those who perform tasks "so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678, 697 (6th Cir. 2020) (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (internal quotation marks omitted)). "[A]n official is protected by absolute quasi-judicial immunity when he acts pursuant to a valid court order because enforcing or executing a court order is intrinsically associated with a judicial proceeding." *Id.* at 697 (citing *Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir. 2000) (emphasis omitted)).

In this matter, Lynn acted pursuant to a valid court order from Coffee County Juvenile Court when he removed A.R. from school. In *Heithcock v. Tennessee Dep't of Children's Servs.*, the court found that a social worker removing a child from their home pursuant to a Juvenile Court order was entitled to absolute quasi-judicial immunity because, to the extent that any entity was responsible for the removal of the child, it was the juvenile court, not the social worker. No. 3:14-CV-2377, 2015 WL 4879107, at *9 (M.D. Tenn. Aug. 14, 2015) (citing *Bush*, 38 F.3d at 847). This is because "officials must be permitted to rely upon a judge's findings and determinations to preserve the integrity of the court's authority and ability to function." *Bush*, 38 F.3d at 848. In this case, Lynn was acting pursuant to a valid court order from the juvenile court. His action in

removing A.R. from school was part of the judicial proceeding. Defendant Lynn is entitled to absolute quasi-judicial immunity for his actions removing A.R. from school.

## IV. Conclusion

For the reasons stated in this Memorandum Opinion, it is hereby **ORDERED** that:

1. Defendant Assistant District Attorney General Jason Ponder's Motion for Summary Judgment [Doc. 62] is **GRANTED** and Plaintiffs' claims against Defendant Ponder are **DISMISSED**.

2. Defendant Dale Lynn's Motion for Summary Judgment [Doc. 67] is **GRANTED** and Plaintiffs' claims against Defendant Dale Lynn are **DISMISSED**.

3. Judgment shall **ENTER** on behalf of Defendants.

**SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE